Appeal 1837.17 and 1837.18 We'll hear first from Mr. Romashko. Thank you, Your Honor. May it please the Court, my name is Robert Romashko and I represent the appellant, VHC, in this case. Your Honors, although we've made multiple arguments on briefs, really there's only... Hello? Mr. Romashko? Yes, I apologize, Your Honor, my cheek apparently bumped the mute button on the phone. May it please the Court, my name is Robert Romashko. I represent the appellant, VHC. This appeal involves only one issue, Your Honor, although there are multiple arguments that issue affect. That issue is when reaching its conclusions of law and finding against VHC in both of its main arguments. The tax court relied heavily on certain findings of fact that are simply not supported by any evidence in the record or where it ignored material and significant evidence on these points. The tax court's disregard for the record is clear error that must be reversed by this court. Now, this issue infects the tax court conclusions as to both of VHC's main arguments on appeal. First, that advances to or for the benefit of Ron Vanden Heuvel and his companies were ordinary and necessary business expenses of VHC under Lorchie v. Commissioner, and second, whether those advances could otherwise, in the alternative, be considered bona fide debt that could be deductible as bad debts. In both cases, the tax court specifically stated that there was no evidence presented on certain issues, and it was just 100% wrong. The record contains that evidence. In other instances, the tax court fails to address significant record evidence in favor of VHC. This evidence was presented, some of it stipulated, and the evidence is not directly controverted. For reasons that are inexplicable, the tax court, in its opinion, failed to consider this evidence. Had it done so, it would have come to the opposite conclusions on these issues than it did. Now, these are issues of fairness and accountability in the judicial process. Courts need to reach conclusions supported by the records before them, and their opinions ought to reflect those records and those conclusions. The tax court didn't do that here. Turning first to the Lorchie argument, the tax court committed clear error in affirmatively concluding that evidence that was presented was not, and in reaching conclusions on the of the test that were unsupported and contradictory of the record. Now, in summary, this issue relates to payments that were made for the benefit of Ron Vanden Heuvel and his companies, pursuant to a September 2002 guarantee that VHC executed with Associated Bank. Mr. Romashko, are you there? I apologize. My phone cut out there, Your Honor. I was just turning to the Lorchie test, Your Honor. The tax court, excuse me, the Lorchie issue is related to a 2002 guarantee with Associated Bank. The VHC signed this guarantee in September of 2002, and by doing so, agreed to guarantee and cross-collateralize payments, excuse me, debt obligations of Ron Vanden Heuvel and his companies with its own. Now, the IRS presented very little evidence on this issue. The IRS produced one witness during its case in chief. The tax court's conclusions are based on IRS's argument and speculation, not the evidence in the record. Now, Lorchie v. Commissioner says that a party who pays a third party's expenses, though under no obligation to pay, may deduct those payments if the primary purpose was an ordinary and necessary business expense of the payor. Factual determinations of the tax court are reviewed for clear error, and while this is a high bar, it's not an insurmountable one. This court overturned factual determinations of lower courts in, for example, McMath and Duarte, which are cited in our briefs. Now, what were these clearly erroneous determinations? First, the tax court said that payments weren't substantiated. The tax court was wrong in that regard. The tax court stated that VHC failed to support its internal books and records because, and it says this at page 72 of its opinion, the tax court did not introduce evidence of receipts, bank statements, contracts for services rendered, or documents establishing funds paid on guarantees. Now, that's 100 percent wrong. There are several examples we cited in brief, but briefly, the biggest of these is an $8.3 million purchase agreement where VHC agreed to assume $8.3 million around Vanden Heuvel's debt to the Associated Bank. This was Exhibit 560J below, and it's cited as SA-207 in the record on appeal. Mr. O'Masha, this is Judge St. Neve. Where in the record is there any evidence that VHC actually paid that amount? Your Honor, the loan? The document you're citing is the loan purchase, but where is there any evidence of actual payment? Because I think you would have to agree there would have to be an actual payment of it for it to qualify for this exception. Your Honor, I would agree that there has to be an actual payment. And with respect to that specific document, I would point the Court to two places. First, there are, because I will agree that there's no specific check with respect to this agreement in the record. And nobody testified that it was actually paid. Your Honor, I believe that there are two places you can look to in the record, though, that show the payment. First would be the contract itself corroborates VHC's records. But second, and more importantly, I think, is Associated Bank's internal records on the work out of VHC and Ron Vanden Heuvel's loans indicate and reflect that VHC assumed the $8.3 million. So that should substantiate that the transaction actually took place, Your Honor. Was that brought to the tax court's attention? Both of those documents were cited with respect to findings of fact, yes, Your Honor. In addition, there are other transactions that certainly have checks attached to them. There, on brief, we cited a $125,000 advance that was presented to the tax court as part of Exhibit 1107P and was also the subject of findings of fact. There are also a series of $69,000 payments to Bay Lake Bank that were subjects of proposed findings of fact below and were Exhibits 554, 1107, and 1108 before. And that's not only the Bay Lake Guarantee documents that are cited with respect to those, but also the individual payments and check details. So in light of the above, the finding that there is no evidence of these transactions can't be affirmed. It's just not supported. There is evidence of these transactions, and the tax court should have laid the evidence, but did not. Turning, then, to the ordinary and necessary point, the tax court concluded that even if BHC did substantiate some of the advances, it did not establish that expenses were ordinary and necessary. It concludes this at page 73 of its opinion. The tax court has two related grounds to make this conclusion. It says that the advances and guarantees were harmful to BHC rather than helpful, and they were entered into to help Ron Vanden Heuvel rather than to protect BHC's own business. But the substantial testimony and evidence on these points contradicts that finding. And again, all this testimony is provided by BHC, not the IRS. The IRS did not provide any directly contradictory testimony to BHC's evidence. But it's BHC's burden of proof. You would agree with that. The IRS doesn't have to put on evidence disproving it. Unquestionably, Your Honor. So it's not a matter of disproof. And that's what the tax court found. The tax court found that you had not met your burden based on the evidence that you put in at the trial. Correct. However, the tax court's opinion doesn't address significant record evidence, as I will get to now. So in the Lorca context, it should be clear there's always going to be a benefit to a third party. That's you're paying a third party's expenses. Ultimately, Ron Vanden Heuvel, in this case, received the benefit of $60 million in payments. But these were pursuant to a guarantee that BHC signed. They're contingent obligations. When BHC signs the guarantee, it doesn't know that it will make any payments or how much they will be. The testimony is that BHC did not expect to make anywhere near $60 million in payments. And I don't think there's any contradiction to that on the record. Now, Associated Bank and Ron Vanden Heuvel knew differently because Associated Bank knew that Ron had defeated their collateral positions and that he had no source of repayment. That's why they constructed this. This is why they attempted to leverage BHC to make payments on Ron's behalf. Ron knew differently. He's in prison now for defrauding investors and creditors. BHC, on the other hand, didn't know that. They understood that Ron was trying to divest from his businesses. They also understood that they had very limited options. The record reflects that Associated crafted a strategy to try and incentivize BHC to take over payments of these debts or to make the guarantee in favor of Ron. They did this by leveraging BHC's line of credit. There is testimony in the record from Tim Vanden Heuvel, the vice president of one of BHC's subsidiaries, that BHC would have gone bankrupt had it not had lines of credit because it wouldn't have been able to make payroll. It's a contractor and it gets paid in arrears. The evidence shows that BHC tried to move its debt to other banks but couldn't, and so it had no choice but to sign this or to go out of business. In that context, it was in BHC's best interest, and it was a net benefit to BHC to sign this. That's borne out by the fact that BHC ultimately stayed in business. It ends up putting out far more money than it could have imagined under this guarantee agreement, but it works out for BHC. They survive, and that's really the benefit to BHC and the motive BHC had for entering into these transactions. Now, the tax court doesn't address any of that beyond saying that the BHC was concerned about its lines of credit, but it goes far beyond that. The Third Circuit and Ambassador Commissioner offered a reasonable standard here, which is that where the trial tribunal's factual findings and inferences are final and less shown to be clearly erroneous, the trial court needs to affirmatively disclose what disposition it made of so important a factor as the taxpayer's testimony of profit. The tax court doesn't do that. The tax court ignores that testimony and evidence other than discussing it as concern and doesn't address what's actually in the record. That's not sufficient evidence to affirm the tax court's findings. Further, one other brief point on this issue. The tax court also suggested that the presence of prior guarantees establishes that there is some pattern or that this means the guarantee was for Ron's benefit, not for BHC's. But this guarantee, the September 2002 one, the record reflects that it's significantly broader. It cross-collateralizes and has cross-default provisions between all of Ron Bend and Hoogle's loans and all of BHC's loans. The documents were in the record. They were stipulated and they weren't disputed. And they're materially different in the tax court, although these material differences were brought to its attention. It did not address that in the opinion. Briefly, I'd also like to address the ordinary nature of these expenses. The IRS on its brief suggests that these expenses were not commonplace in the industry. It references the paper industry, although BHC is a construction contractor. But the issue is really the ordinary test, and there are multiple lines of cases on this, is not primarily meant to deal with whether an expense is commonplace in the industry. The purpose of that is to distinguish between ordinary and immediately deductible expenses and capital expenses. But even if you are looking at the question of whether the expense is commonplace in the industry, necessarily, if you draw any contract narrowly enough, you're going to say, yeah, this is unique to this particular circumstance. Here, these are the expenses for payment, excuse me, expenses to protect access to credit. And there are a number of cases we cited that deal with that in the LORCI context. That's not by itself a reason to declare the expense not ordinary. How do you get around the definition of ordinary in Section 162A that says, the transaction which gives rise to it must be of common or frequent occurrence in the type of business involved? Again, it's a question of how you characterize the transaction. Any transaction, if you characterize it narrowly enough, Your Honor, you could find it to be unique. It's a transaction between these two parties with unique terms that you don't see anywhere else. Anything that's not a form transaction would fall into that. Here, you've got transactions that are simply for the purpose of preserving access to credit. There's no dispute, I think, that most companies, including construction contractors, need access to credit. The record also had testimony in it regarding that BHC had occasionally guaranteed debt obligations of other companies it did business with. This isn't a wholly uncommon thing in its own right. So again, unless you're looking very specifically at the narrow terms of this transaction and saying, well, it's unique because it has this term, this is still a commonplace occurrence. It's entering into guarantees and preserving one's access to credit. Mr. Romasco, your time has expired. You had reserved a minute for rebuttal, and I'll allow that. Thank you, Your Honor. We'll turn now to Mr. Carpenter. Thank you. Good morning, Your Honors, and may it please the Court. I represent the Commissioner of Internal Revenue. So, my friend on the other side, the first thing he talked about was substantiation and their position that the Court ignored evidence of substantiation. We disagree with that. We've said it in our brief, but the Court doesn't even need to reach the issue of substantiation because even if VHC had substantiated all of the amounts that they claim, that wouldn't overcome the tax court's findings that the purported business expenses were not ordinary and necessary and that the purported debt was not bona fide. With respect to ordinary and necessary business expenses, the Lorkey Standard requires a taxpayer who has paid someone else's expenses has to show that it was necessary to protect the taxpayer's own business and that any benefit to the person whose expenses were paid is only incidental. On that point, the tax court did not ignore any evidence. The tax court acknowledged that the 2002 Associated Bank guarantee came with strings attached and that VHC was concerned about maintaining its lines of credit to stay in business. What VHC is asking this court to do, however, is to re-weigh the evidence. The tax court found that the evidence about concern of lines of credit was outweighed by the evidence that VHC's motive was more about helping Ron. That finding has ample support in the record. The tax court specifically found that many of VHC's guarantees actually harmed VHC's business. It didn't protect it, it harmed it. It also found that VHC had a history of entering into substantial guarantees of Ron's debts before 2002 when there is no claim that it was forced to make a guarantee. It hasn't provided any cogent explanation of how the guarantees subsequent to 2002, which it also claims resulted in deductible business expenses. They haven't offered any explanation of how those guarantees were necessary to protect its business. On top of that, the court made findings about the close family ties between VHC and Ron. It's well settled that intra-family transfers are rigidly scrutinized for tax purposes. The court also made findings about Ron's status as VHC's largest shareholder and that the interests of many of VHC's shareholders, including Ron's brother, VHC's president, and Ron's father, VHC's founder, the interest they had as shareholders in Ron's businesses. So, there's plenty of basis in the record to support the court's findings that VHC didn't carry its burden to prove that entering these guarantees was necessary to protect its business. The IRS's disallowance of deduction is entitled to a presumption of correctness, and the tax court's finding that VHC didn't overcome that presumption is not clearly erroneous. Is there some evidence supporting their position? Sure there is, but this court's function isn't to re-weigh that evidence. The trial court, whose job that is, weighed it and found the evidence wanting. So, turning back to whether the tax court considered all the evidence, there's no reason to believe from the opinion that the tax court ignored any evidence that VHC brought to its attention. There are three examples in their belief, but as was pointed out earlier, one of those examples involves a contract that they don't cite any evidence that they ever actually paid the amount stated in the contract. And then you've got three pages out of 12,000 pages of exhibits that show a few payments related to the Bay Lake Bank guarantee, but there was nothing in 650 pages of VHC's post-trial briefing that would have alerted the tax court that that evidence was in the record and that it showed payments on Bay Lake Bank guarantees. So, there's no clear error here, and that's the standard of review that is before the court. I think our positions are clearly stated in our brief. I realize I have some more time, and I'd be happy to answer questions, but if not, we'll rest on our brief as to the other issues. All right. Thank you, Mr. Carpenter. Mr. Romashko, you have a minute. Yes, Your Honor. Two brief points on rebuttal. First, Your Honor, the government indicated that the tax court acknowledged that VHC was concerned about its lines of credit, and the government said it could stay in business. The important thing to note is the tax court did not say that. The tax court's opinion ignores that this was an issue of staying in business or not, and to properly weigh whether any benefit to Ron was incidental compared to the benefit to VHC, you need to understand that VHC, this was an issue of staying in business, and that is not addressed in the tax court opinion. Further, the government counsel indicated that nothing would have alerted the tax court to the example cited on brief. That is not the case, Your Honors. All of these were cited as the subjects of findings of tax, and I don't see any clearer way you could bring it to a court's attention than that. So, for these reasons, we would ask the court to remand the case to the tax court for further pursuit. All right. Thank you, Mr. Romashko, and thank you, Mr. Carpenter. The case is taken under advisement.